Willie Victor **ORTIZ PIÑERO,** Plaintiff,

v.

Hon. Victor **RIVERA ACEVEDO,** et al., Defendant.

Civ. No. 93–1449 (JP).

United States District Court, D. Puerto Rico.

Sept. 14, 1995.

Carlos Del Valle Cruz, Lespier & Muñoz Noya, San Juan, PR, Ricardo Torres Muñoz, San Juan, PR, for plaintiff.

Luis Plaza, San Juan, PR, Héctor Quijano, Hato Rey, PR, for defendant.

## OPINION AND ORDER

PIERAS, District Judge.

The Court has before it defendants' Motion for Summary Judgment and plaintiff's Opposition (docket Nos. 18 and 25).

## I. INTRODUCTION

This is an action for injunctive relief and damages brought pursuant to 42 U.S.C.

§ 1983. On January 22, 1993, defendant Rivera Acevedo, the newly elected Mayor of the Municipality of Gurabo, of the New Progressive Party (hereinafter referred to as "NPP"), rescinded and refused to renew plaintiff's employment contract for his position as the Director of the Office of Federal Programs for the Municipality of Gurabo. Plaintiff alleges that defendant Rivera Acevedo rescinded and failed to renew his employment contract based solely on plaintiff's political affiliation with the Popular Democratic Party (hereinafter referred to as "PDP"). Plaintiff asserts that the recision and nonrenewal of his contract violated his rights to free speech and free political association under the First Amendment, and right to notice and an opportunity to be heard prior to the discharge under the Due Process Clause of the Fourteenth Amendment.

Defendants first assert that plaintiff was dismissed pursuant to a valid unilateral termination clause in plaintiff's employment contract. Next, defendants argue that political affiliation was a valid requirement for the position of Director of Office of Federal Programs, therefore plaintiff's dismissal did not violate his First Amendment rights. Defendants further assert that the position of Director of Office of Federal Programs was one of trust, subject to removal at any time. Therefore, plaintiff did not have any property interest in his continued employment, and was not entitled to notice and an opportunity to be heard prior to his dismissal. Defendant Rivera Acevedo, in his individual capacity, asserts that his conduct did not violate any clearly established law, thus he is entitled to qualified immunity.

The Court finds as a matter of law that political affiliation is an appropriate requirement for the position of Director of the Office of Federal Programs for the Municipality of Gurabo. Furthermore, plaintiff did not have a reasonable expectation in the continuation of his temporary, confidential position, thus he was not entitled to due process considerations before his dismissal. Consequently, defendants' motion for summary judgment is hereby **GRANTED** for the reasons hereinafter stated.

## II. UNCONTESTED FACTS

The parties have agreed to the following facts. *See* Initial Scheduling Conference Order (docket No. 38).

1. On October 1, 1992, plaintiff, Willie Víctor Ortiz Piñero, signed a contract with Mr. Ramón García Caraballo, PDP Mayor of the Municipality of Gurabo at that time. Pursuant to the contract, plaintiff agreed to perform the services of Director of the Federal Programs for the Municipality of Gurabo for a term of one year.

2. On August 30, 1991, plaintiff and Mr. García Caraballo extended the contract for another one year term, which would end on September 30, 1992.

3. The same contract was extended again for another term which would end on September 30, 1993.

4. The fifth clause of the contract provides as follows:

"... The Honorable Ramón García Caraballo as representative of the Municipality of Gurabo, reserves the right of terminating this contract at any moment before its maturity, sending a prior written notice 30 days in advance of the date whereby the same is to be resolved."

5. The Municipality of Gurabo does not enjoy immunity under the Eleventh Amendment, and it is a person for the purpose of the Civil Rights Act 42 U.S.C. § 1983.

6. Plaintiff is a well-known member of the PDP and has held the political positions of PDP Municipal Assembly Member, PDP Gurabo Electoral Commissioner, and the Finance Director for PDP Mayoral Candidate Angie Flores, who ran against defendant Rivera Acevedo during the 1992 mayoral election.

7. Defendant Rivera Acevedo, a member of the New Progressive Party, ("NPP") was elected Mayor of the Municipality of Gurabo at the November 4, 1992 elections, and assumed office on January 11, 1993.

8. On January 22, 1993, defendant Rivera Acevedo sent Ortiz a written letter notifying him that his contract with the Municipality was terminated, effective March 5, 1993.

This notification was more than 30 days in advance.

9. After plaintiff's discharge, defendant Rivera Acevedo named Luis R. Figueroa Ramos, a member of the NPP, as plaintiff's replacement as Federal Programs Director.

10. The amount of funds received from the federal government vis a vis the budget of the Municipality was substantial.

## III. SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides for the entry of summary judgment in a case where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Pagano v. Frank*, 983 F.2d 343, 347 (1st Cir.1993); *Lipsett v. University of Puerto Rico*, 864 F.2d 881, 894 (1st Cir.1988).

Summary judgment is appropriate where, after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, there is not the slightest doubt as to whether a genuine issue of material fact exists. *Kennedy v. Josephthal & Co.*, 814 F.2d 798, 804 (1st Cir.1987). A "genuine" issue is one that is dispositive, and which consequently must be decided at trial. *Mack v. Great Atlantic and Pacific Tea Co.*, 871 F.2d 179, 181 (1st Cir. 1989); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). A material fact, which is defined by the substantive law, is one which affects the outcome of the suit and which must be resolved before attending to related legal issues. *Mack*, 871 F.2d at 181.

The party filing a motion for summary judgment bears the initial burden of proof to show "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Thereafter, the burden shifts to the non-movant to provide the Court, through the filing of supporting affidavits or otherwise, with "some indication that he can produce the quantum of evidence [necessary] to enable him to reach the jury with his claim." *Hahn v. Sargent*, 523 F.2d 461, 468 (1st Cir.1975). The non-movant cannot rest upon mere allegations or denial of the pleadings. Fed.R.Civ.P. 56(e). Indeed, the non-movant must affirmatively show that "sufficient evidence supporting the claimed factual dispute [exists] to require a jury or judge to resolve the parties' differing versions of truth at trial." *First National Bank v. Cities Service Co.*, 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968).

## IV. FIRST AMENDMENT CLAIM

In order to establish a prima facie case of political discrimination for a patronage dismissal violative of the free association rights protected by the First Amendment, plaintiff must show that his affiliation with the PDP was the substantial or motivating factor underlying the recision and nonrenewal of his employment contract. *Ferrer v. Zayas*, 914 F.2d 309, 311 (1st Cir.1990) (citing, *inter alia*, *Metropolitan Housing Development Corp.*, 429 U.S. 252, 270, 97 S.Ct. 555, 565, 50 L.Ed.2d 450 (1977); *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980)). Plaintiff bears the initial burden of demonstrating that political affiliation is the motivating factor for defendant's decision to dismiss plaintiff, and circumstantial evidence may be sufficient to support this contention. *Estrada–Izquierdo v. Aponte–Roque*, 850 F.2d 10, 14 (1st Cir.1988). Defendant then has the opportunity to come forward and rebut plaintiff's contention by proving that there was a legitimate and non-pretextual reason for dismissing plaintiff. *Mount Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).

Plaintiff points to the following facts to support his contention that his dismissal was politically motivated. First, plaintiff argues that the Puerto Rico Civil Code establishes a rebuttable presumption that any employment discharge within six months of a political election was politically motivated, 29 L.P.R.A. § 137. Defendant rescinded plaintiff's contract during January 1993, within six

months of the November 1992 mayoral election. In addition, plaintiff asserts that Luis R. Figueroa Ramos, the individual who replaced plaintiff as the Director of the Office of Federal Programs, was a member of the NPP.

Defendants do not contend that political affiliation was a factor in their decision to terminate the contract. They argue, however, that political affiliation is an appropriate requirement for the effective performance of certain positions. *Branti v. Finkel*, 445 U.S. 507, 518, 100 S.Ct. 1287, 1294, 63 L.Ed.2d 574 (1980) and *Elrod v. Burns*, 427 U.S. 347, 367–368, 96 S.Ct. 2673, 2686–2687, 49 L.Ed.2d 547 (1976). In *Branti* and *Elrod*, the Supreme Court recognized that for certain government positions, an employee's private political beliefs might interfere with the performance of his public duties. Thus, the state's vital interest in maintaining governmental effectiveness and efficiency outweigh the individual's First Amendment rights to free association. *Branti*, 445 U.S. at 517, 100 S.Ct. at 1294; *Elrod*, 427 U.S. at 366, 96 S.Ct. at 2686. Defendants assert that the position of Director of the Office of Federal Programs for the Municipality of Gurabo was a position for which political affiliation was an appropriate requirement.

■ The First Circuit has further defined the relevant analysis of whether political affiliation is an appropriate requirement for a particular position through a two-prong test. First, one must determine whether the position at issue relates to partisan political interests or concerns; and second, whether the inherent duties of the position are such that party affiliation is an appropriate requirement of the position. *Jiménez Fuentes v. Torres Gaztambide*, 807 F.2d 236, 241–242 (1st Cir.1986) *cert. denied*, 481 U.S. 1014, 107 S.Ct. 1888, 95 L.Ed.2d 496 (1987); *see also Collazo Rivera v. Torres Gaztambide*, 812 F.2d 258, 260–261 (1st Cir.1987).

■ Under the first prong, it is necessary to analyze whether the agency or department was involved in public policymaking activities about which political differences were possible. It is not essential that an actual conflict about political concerns exists. The mere possibility that disagreement could arise as to the goals of the agency or the implementation of those goals demonstrates the importance of political differences. *Méndez-Palou v. Rohena-Betancourt*, 813 F.2d 1255, 1258 (1st Cir.1987). *See also Juarbe-Angueira v. Arias*, 831 F.2d 11, 15 (1st Cir. 1987) *cert. denied*, 485 U.S. 960, 108 S.Ct. 1222, 99 L.Ed.2d 423 (1980).

■ As a matter of law, the Office of Federal Programs for the Municipality of Gurabo is an agency whose mission involves the implementation of public policy of the municipality. The agency was directly involved in receiving and distributing a substantial amount of federal funds, through direct grants and guaranteed loans, to be used for the construction or repair of significant municipal projects. For instance, while plaintiff was director, the agency acquired funds or continued to receive funds for the following projects: construction of a new City Hall building involving a loan from the Farmer's Home Administration; construction of a public car terminal, with funds provided by the Federal Transportation Act; and construction of a treatment plant (plaintiff's Deposition, ("Deposition") docket No. 25, at 65). Furthermore, these projects required significant expenditures. While plaintiff was Director of the Office of Federal Programs, approximately one million dollars in funds and loans passed through the office for various projects during the year 1992 (Deposition at 29–30).

In analyzing the possibility that political disagreement could exist regarding the goals and the implementation of the goals of the Public Building Authority of the Commonwealth of Puerto Rico, the First Circuit has held that "[w]here, how and when the government will repair or reconstruct public buildings, which towns will have which priorities, when and where money is to be spent, may well be a matter of considerable interest to government officials including political leaders." *Juarbe-Angueira v. Arias*, 831 F.2d 11, 15 (1st Cir.1987) *cert. denied*, 485 U.S. 960, 108 S.Ct. 1222, 99 L.Ed.2d 423 (1980). Similarly, where, how and when a municipal government will build or repair municipal projects, which municipal project

will have priority, and when and where money is to be spent, may well be a matter of considerable interest to municipal government officials, especially when it is federal money being spent on municipal projects. Therefore, political disagreement could arise concerning the implementation of the goals of the Office of Federal Programs.

Moving to the second prong of the analysis, one must analyze the inherent powers and responsibilities of the individual position within the agency. *Méndez–Palou*, 813 F.2d at 1258. It is clear from the evidence provided that there is no official delineation of plaintiff's duties while he was Director. In general, public employees for the government of Puerto Rico receive and acknowledge an official Job Classification Questionnaire (Form "OP–16"), which states the specific job duties of a particular position. In plaintiff's deposition, however, he states that he never signed an OP–16, nor was there a clear list of his official duties. Plaintiff performed whatever duties the Mayor requested and demanded, as long as the Mayor's requests did not contravene binding law. (Deposition at 24, 39, 46). In general, "[a]n employee with responsibilities that are not well defined or are of broad scope more likely functions in a policymaking position." *Méndez–Palou v. Rohena–Betancourt,* 813 F.2d at 1262 (citing *Elrod,* 427 U.S. at 368, 96 S.Ct. at 2687).

Although courts generally rely upon the OP–16 as a concise, detailed account of the inherent powers and responsibilities of the job description, the OP–16 is not the only relevant evidence describing the duties of an individual position. *Méndez–Palou,* 813 F.2d at 1260. In plaintiff's deposition, he states that the Director of the Office of Federal Programs was required to inform the Mayor of the amount of funds which would be received by Municipal Services; obtain and maintain the documents substantiating the need for federal funds; follow-up on existing projects; receive Small Block Grant Program funds; and administer funds from the Department of Housing and Urban Development, loans from the Municipality and Farmer's Home loans (Deposition at 18). Plaintiff argues that these duties involved requesting federal grants for programs and assuring compliance with the terms of those grants. Therefore, plaintiff asserts, his position merely required the application of technical criteria. However, it is apparent from looking at the inherent duties of the Director of Federal Programs, that the position involved the implementation of public policy.

First, the duties that the Director of the Office of Federal Programs performed on a daily basis are not of the technical type, which "are measured solely by strictly technical or professional criteria." *Méndez–Palou* 813 F.2d at 1258. Neither plaintiff's educational background [1] or work experience [2] qualifies him as an expert in the field of compliance with the requisites of federal funds and loans. In fact, he admitted that he had no specialization as to fiscal matters, since he would depend upon either the Director of Finance or the accountant for all financial information (Deposition at 31). Nor did plaintiff have the ability to decide if the federal funds were being invested properly, since it was the responsibility of the engineer to decide how the funds were being invested (Deposition at 27).

Plaintiff's duties related directly to the Mayor's interests and concerns. First, the Mayor would chose what projects to complete and how to finance the various projects (Deposition at 24). Then, plaintiff had the responsibility of keeping the Mayor informed about the status of the projects. For instance, plaintiff was responsible for relaying information to the Mayor about whether or not the construction employees were actually working or were on strike, whether something was missing from the construction site,

---

1. Plaintiff had no special training for the position of Director of Office of Federal Programs prior to signing his original contract. Plaintiff's only training occurred on the job. (Deposition at 16).

2. Plaintiff held the following positions prior to becoming Director of the Office of Federal Programs: Assemblyman for the Municipality of Gurabo; Director of Administración del Trabajo; Legislative Services (Deposition at 7). After his dismissal as Director of Federal Programs, plaintiff became a Legal Technician for the Municipality of San Juan (Deposition at 68).

or whether there was an accident at the construction site (Deposition at 27, 28).

Second, plaintiff was privy to certain kinds of confidential information. *Rosario Nevárez v. Torres Gaztambide* 820 F.2d 525 (1st Cir. 1987); *Juarbe–Angueira,* 831 F.2d 11 (1st Cir.); *Candelario v. González Chapel,* 681 F.Supp. 107 (D.P.R.1988). Plaintiff had direct access to audits and oversights of the status of the municipal projects. These financial documents were either sent to plaintiff first, or they were sent to the Mayor and then passed on to him. It was plaintiff's responsibility to review these documents on behalf of the Mayor. (Deposition at 50–64).

Third, it is uncontested that the Mayor of the municipality was plaintiff's direct supervisor, although the Vice Mayor and the Director of Finance also had supervisory powers over plaintiff (Deposition at 24, 25, 35, 36 and 39). His close contact with the Mayor ensured that there was a higher probability that he would have access to "a substantial amount of confidential information relating to the politically sensitive operations of the office." *Méndez–Palou* 813 F.2d at 1263.

As a final consideration, it is apparent that the previous Mayor considered political affiliation as an important factor in the performance of the duties of the Director of the Office of Federal Programs. After the 1992 mayoral election, the previous Mayor wrote a letter to plaintiff, and the other directors of municipal administrative agencies recommending that they step down from their positions of confidence because he had lost the election (Deposition at 47). The Mayor's perceptions that plaintiff's position was one involving the implementation of public policy is a relevant, although not dispositive, factor.

Plaintiff's generalized duties and close contact with the Mayor demonstrate that plaintiff was the eyes and the ears of the Mayor concerning several projects. Therefore, we must conclude that political affiliation was an appropriate requirement for the position of Director of the Office of Federal Programs, and the recision and nonrenewal of plaintiff's contract did not violate his First Amendment rights.

## V. FOURTEENTH AMENDMENT CLAIM

The Due Process Clause of the Fourteenth Amendment guarantees the right to an informal hearing before the termination of a property interest, *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985). A property interest in continued public employment is created by "existing rules or understandings that stem from an independent source such as state law." *Id.,* 470 U.S. at 538, 105 S.Ct. at 1491. Whether a property interest exists depends upon whether it was objectively reasonable for the employee to believe, based upon either statute or employment contract, that he could rely on continued employment. *Bishop v. Wood,* 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976).

The parties dispute both which is the proper independent source of Commonwealth law which creates and defines plaintiff's property interest in continued employment, and how the law applies to the position of the Director of the Office of Federal Programs. The Puerto Rico Personnel Law, ("Act") 3 L.P.R.A. § 1301, *et seq.,* divides government employees into two categories, career employees and confidential employees. 3 L.P.R.A. § 1349. Confidential employees are "those who intervene or collaborate substantially in the formulation of public policy, who advise directly or render direct services to the head of the agency...." 3 L.P.R.A. § 1350. These employees are "of free selection and removal." 3 L.P.R.A. § 1336(4). In contrast, career employees are those who enter the civil service system after following the procedures established for competition based upon merit, 3 L.P.R.A. § 1352, and may only be dismissed for "good cause, after preferment of charges in writing." 3 L.P.R.A. § 1336(4). The Autonomous Municipality Act ("AMA") which applies specifically to employees of municipalities, as opposed to employees of the Commonwealth government, provides for two classifications in addition to the already recognized trust and career positions: that of the temporary employee, whose position is that of a fixed duration which shall not exceed one year, 21

L.P.R.A. § 4554(c), and that of the irregular employee. 21 L.P.R.A. § 4554(d).

Both sources of law create plaintiff's property interest in his continued employment as Director of the Office of Federal Programs. It is undisputed that plaintiff's position was contractual for a period of one year, which was renewed on two occasions. Therefore under the AMA, his position is classified as temporary ("transitorio"), and he had no interest in continued employment after the term of his contract had expired. The question here, however, revolves around the definition of plaintiff's interest in continued employment during the duration of the contractual period. The Court finds as a matter of law, that in addition to being a temporary employee, the Director of the Office of Federal Programs was a confidential position.

The Puerto Rico Personnel Act provides that the Mayor of each Municipality shall submit a plan to the Municipality Assembly designating which positions are confidential positions. 3 L.P.R.A. § 1351. The Central Office of Personnel Administration ("COPA") then has the responsibility of assuring that the plans comply with the provisions of the Act. *Id.* Defendants contend that the Municipality of Gurabo designated Federal Programs Director, as one of its eleven trust positions. Municipal Ordinance Number Three (3), Series 1981–82, dated September 14, 1981.

Plaintiff counters that the municipal ordinance cited by defendants was not in effect in September 1991 when plaintiff signed his first employment contract with the Mayor of Gurabo, therefore, the ordinance is inapplicable. Plaintiff further asserts that the Municipality failed to comply with all pertinent regulations provided in the Act. 3 L.P.R.A. § 1351. Although defendants submitted the proposed plan as an exhibit to its motion for summary judgment (docket No. 18, Exhibit No. 6—Spanish version, docket No. 44, Exhibit No. 9—English version), they have not submitted any evidence that COPA actually approved Gurabo's plan. Plaintiff argues that the failure to receive COPA approval nullifies the effect of Gurabo's proposed trust position designations.

Plaintiff's contention relies upon an erroneous interpretation of the statutory language. The relevant provision reads as follows:

Each agency shall present for approval of the Office a plan containing the confidential positions by which it desires to operate. In the case of municipalities, the Municipal Assembly shall follow the ordinance or resolution approving the plan submitted by the mayor and shall send it to the Office for the sole purpose of ascertaining that the provisions of section 1350 of this title have been complied with. 3 L.P.R.A. § 1351.

Approval by COPA of a plan is essential for an agency of the Commonwealth. Municipalities, however, are subject to separate requirements. Therefore, the failure to present evidence demonstrating that COPA actually approve the designations of confidential employees does not preclude the determination that a certain position was one of confidence.

Moreover, the previous Mayor wrote a letter to each of the individuals who held what he believed were confidential positions, suggesting that they renounce their positions. Thus, it is apparent that the Mayor considered plaintiff's position one of confidence by the time he was leaving office. Plaintiff, therefore, held a temporary, confidential position as Director of Office of Federal Programs. Confidential employees are not entitled to notice and hearing prior to dismissal. Consequently, the rescission and nonrenewal of plaintiff's contract did not violate his Fourteenth Amendment rights.

## VI. CONCLUSION

Political affiliation was an appropriate requirement for the position of Director of the Office of Federal Programs for the Municipality of Gurabo. Thus defendants' action in rescinding plaintiff's contract did not violate plaintiff's First Amendment rights. Further, the Director of the Office of Federal Programs was a temporary, confidential position. Therefore, plaintiff did not have a reasonable expectation in the continued employment in his position pursuant to Commonwealth law. Consequently, defendant was not required to provide plaintiff with notice and an opportu-

nity to be heard prior to dismissal. Thus, defendant's employment decision did not violate plaintiff's Fourteenth Amendment rights. For the foregoing reasons, defendant's motion for summary judgment is hereby **GRANTED.**

IT IS SO ORDERED AND ADJUDGED.