**Willie Victor ORTIZ–PIÑERO, Plaintiff, Appellant,**

v.

**Victor RIVERA–ARROYO, Individually and as Mayor of Gurabo, et al., Defendants, Appellees.**

**No. 95–2167.**

United States Court of Appeals, First Circuit.

Heard Feb. 28, 1996.

Decided May 15, 1996.

---

Carlos A. Del Valle Cruz, Hato Rey, PR, for appellant.

Elisa Bobonis Lang, Hato Rey, PR, with whom José R. Gaztambide and Gaztambide & Plaza were on brief for appellees.

Before TORRUELLA, Chief Judge, COFFIN, Senior Circuit Judge, and CYR, Circuit Judge.

CYR, Circuit Judge.

Plaintiff Willie Victor Ortiz Pinero ("Ortiz") appeals from a district court judgment dismissing his political discrimination claims against the City of Gurabo, Puerto Rico, and its incumbent Mayor. We affirm.

# I

## BACKGROUND

In 1981, the City of Gurabo enacted an ordinance, pursuant to P.R. Laws Ann. tit. 3, § 1351, designating eleven municipal offices as positions of "trust" or "confidentiality," including the directorship of the Office of Federal Programs ("OFP"), the municipal agency charged with obtaining and administering federal funding for various public works projects. *See* Municipal Ordinance No. 3, Series 1981–82 (Sept. 14, 1981).

In August 1991, then-Mayor Ramon Garcia Caraballo appointed Ortiz, a fellow member of the Popular Democratic Party (PDP), as OFP Director, and allegedly described the position to Ortiz as a non-"confidence" position. Mayor Caraballo later extended Ortiz' appointment through August 1993. In November 1992, however, after the PDP mayoral candidate was rejected by the electorate, outgoing Mayor Caraballo notified Ortiz that he should resign forthwith because the OFP directorship was a "confidential" position which the new administration was entitled to fill. Ortiz refused to resign. Thereafter, the incoming New Progressive Party (NPP) mayor, defendant-appellee Willie Victor Rivera–Arroyo ("Rivera"), dismissed Ortiz.

In due course, Ortiz initiated the present action for damages and reinstatement under 42 U.S.C. § 1983 against the City of Gurabo and Mayor Rivera, claiming political discrimination and deprivation of his property inter-

est in continued employment without the benefit of a pretermination hearing, in violation of the First and Fourteenth Amendments to the United States Constitution. The defendants moved for summary judgment on the ground that the OFP directorship is a "trust" position for which compatible political affiliation constitutes a legitimate qualification. *See Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980); *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). Their motion was accompanied by a written "certification" from the City personnel office defining the responsibilities of the OFP directorship.[1] After determining that the evidence compelled a finding that the OFP directorship is a trust position, the district court granted summary judgment for defendants on all claims. *Ortiz Pinero v. Rivera Acevedo,* 900 F.Supp. 574 (D.P.R.1995).

# II

## DISCUSSION

### A. Standard of Review

We review *de novo,* to determine whether the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See O'Connor v. Steeves,* 994 F.2d 905, 906–07 (1st Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 634, 126 L.Ed.2d 593 (1993). Although all competent evidence and reasonable inferences are viewed in the light most favorable to Ortiz, he cannot carry the day on mere " 'conclusory allegations, improbable inferences, and unsupported speculation.' " *Id.* (quoting *Medina–Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990)).

### B. First Amendment Claim

#### 1. Applicable Law

In a political discrimination case, the plaintiff first must show that party affilia-

---

1. The certification lists five responsibilities: (1) "[t]o direct, coordinate and supervise all the operations of the Federal Programs Office"; (2) "[t]o see to the compliance and good functioning of said Office"; (3) "[t]o submit all the corresponding reports to the Municipal Services Administration Program, the State Agency delegat- ed upon by the C.D.G.B. Program"; (4) "[t]o take part in seminars and training that are offered on the Federal Programs as well as to accompany the Mayor in all matters concerning the Program"; and (5) "[t]o perform other similar duties as assigned."

tion was a substantial or motivating factor for the challenged action. *See Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977); *Jirau–Bernal v. Agrait,* 37 F.3d 1, 3 (1st Cir.1994).[2] The burden then shifts to defendants to establish *either* a nondiscriminatory reason for the dismissal, *see Ferrer v. Zayas,* 914 F.2d 309, 311 (1st Cir.1990), *or* that plaintiff held a "political" position for which party affiliation constituted an appropriate qualification for continued employment, *see Branti,* 445 U.S. at 518, 100 S.Ct. at 1294–95; *De Choudens v. Government Dev. Bank of P.R.,* 801 F.2d 5, 8 (1st Cir.1986), *cert. denied,* 481 U.S. 1013, 107 S.Ct. 1886, 95 L.Ed.2d 494 (1987). Thus, the *Branti/Elrod* defense is designed to ensure that "representative government not be undercut by tactics obstructing the implementation of policies of the new administration, policies presumably sanctioned by the electorate." *Elrod,* 427 U.S. at 367, 96 S.Ct. at 2687.

■ Whether a government position is "political" does not depend upon such loose-fitting labels as "confidential" or "policymaking," but on the *substance of the duties inherent in the position itself. Branti,* 445 U.S. at 518, 100 S.Ct. at 1294–95 (noting: "a position may be appropriately considered political even though it is neither confidential nor policymaking in character," and, by the same token, party affiliation is not a relevant consideration for all policymaking or confidential positions); *see Romero Feliciano v. Torres Gaztambide,* 836 F.2d 1, 3 (1st Cir. 1987) (abjuring reliance on "rigid labels" in *Branti/Elrod* analysis).

■ We employ a two-part inquiry to identify "political" positions under the *Branti/Elrod* analysis:

First, we inquire whether the overall functions of the employee's department or agency involve "decision making on issues where there is room for political disagreement on goals or their implementation." Second, we decide whether the particular responsibilities of the plaintiff's position,

within the department or agency, resemble those of "a policymaker, privy to confidential information, a communicator, or some other office holder whose function is such that party affiliation is an equally appropriate requirement" for continued tenure. Among the indicia material to the second element are "'relative pay, technical competence, power to control others, authority to speak in the name of policymakers, public perception, influence on programs, contact with elected officials, and responsiveness to partisan politics and political leaders.'"

*O'Connor,* 994 F.2d at 910 (quoting *Jimenez Fuentes v. Torres Gaztambide,* 807 F.2d 236, 241–42 (1st Cir.1986) (en banc), *cert. denied,* 481 U.S. 1014, 107 S.Ct. 1888, 95 L.Ed.2d 496 (1987)) (other citations omitted).

■ Although obviously fact-intensive, the ultimate determination whether a government position is "political" presents a question of law for the court, rather than an issue of fact for jury resolution. *See McGurrin Ehrhard v. Connolly,* 867 F.2d 92, 93 (1st Cir.1989) (Breyer, J.) (noting that the "important constitutional and governmental interests surrounding the application of the [*Branti/Elrod* ] exception" make it more suitable for determination by the court). Examining all competent evidence in the light most favorable to Ortiz, we conduct a *de novo* assessment of the relevant factors, *see In re Extradition of Howard,* 996 F.2d 1320, 1327 (1st Cir.1993) (plenary appellate review generally accorded issues of law), and "make a common sense judgment in light of the fundamental purpose to be served [by the *Branti/Elrod* analysis]." *Jimenez Fuentes,* 807 F.2d at 242.

### 2. The OFP and "Partisan Political Interests"

■ The OFP is charged with marshaling and administering the million or so dollars obtained annually from federal agencies, and with doling it out for various public works projects within the municipality. Thus, the

---

**2.** We assume, without deciding, that there is sufficient competent evidence that political affili-

ation motivated the dismissal.

OFP unmistakably is a municipal "department or agency [whose overall functions] involve 'decision making on issues where there is room for political disagreement on goals or their implementation.'" *O'Connor*, 994 F.2d at 910 (citations omitted). Indeed, its inherent responsibilities inevitably entail the kinds of discretionary decisions traditionally associated with municipal politics.[3] Accordingly, we conclude that defendants met the first-prong test under *Jimenez Fuentes*.[4]

### 3. *The Duties Inherent in the OFP Directorship*

Under the second prong, we examine any evidence the defendants may have adduced that "the *particular responsibilities* of the plaintiff's position, within the [OFP], resemble those of 'a policymaker, privy to confidential information, a communicator, or some other office holder whose function is such that party affiliation is an equally appropriate requirement' for continued tenure." *O'Connor*, 994 F.2d at 910 (citations omitted) (emphasis added).

### a) *Lack of Written Job Description*

■ Ortiz first argues that summary judgment is precluded because the City of Gurabo has no official, written job description (a.k.a. Form OP–16) for its OFP Director, nor indeed for *any* of its municipal

employees. He relies upon cases in which we have held that courts should determine the duties inherent in a particular position by examining the governmental entity's written, signed job descriptions, rather than the duties actually performed by the plaintiff or prior occupants of the position in question. *See, e.g., Mendez–Palou v. Rohena–Betancourt*, 813 F.2d 1255, 1260 (1st Cir.1987). Ortiz would have us conclude that the absence of any written job description, combined with conflicting circumstantial evidence as to the duties performed by the OFP director, leaves unresolved issues of material fact which preclude summary judgment. *See Romero Feliciano*, 836 F.2d at 3 ("[W]e have considered the OP–16 dispositive in other Puerto Rico political discrimination cases...."). In so doing, Ortiz misconstrues our precedents and the nature of the issue under consideration.

■ Although written, signed job descriptions may provide highly probative evidence as to the responsibilities inherent in a particular government position, and may even prove "dispositive," *see id.* at 3, we have never suggested that their *absence* is dispositive, *cf. Mendez–Palou*, 813 F.2d at 1260 ("*Whenever possible*, we will rely upon this document because it contains precisely the information we need ....") (emphasis added), or precludes a defendant from resorting to other evidence, *see, e.g., Romero Feliciano*, 836 F.2d at 3 (noting that defendant

---

3. *See id.* (noting that the first prong of the *Jimenez Fuentes* test was readily met where the municipal department for which plaintiff worked was responsible for developing and implementing public works programs, since "[e]lections often turn on the success or failure of the incumbent [administration] to provide these services"); *Jimenez Fuentes*, 807 F.2d at 242 (finding that regional director of commonwealth housing department, charged with ameliorating housing conditions among low and middle income families, was a position "relate[d] to partisan political interests"); *accord Juarbe–Angueira v. Arias*, 831 F.2d 11, 15 (1st Cir.1987) ("Where, how, and when the government will repair or reconstruct public buildings, ... when and where money is to be spent, may well be a matter of considerable interest to ... political leaders."), *cert. denied*, 485 U.S. 960, 108 S.Ct. 1222, 99 L.Ed.2d 423 (1988); *Mendez–Palou v. Rohena–Betancourt*, 813 F.2d 1255, 1260 (1st Cir.1987) (finding Administration for Environmental Quality Board engaged in a "politically-sensitive mission" for purposes of *Branti/Elrod* analysis).

4. Ortiz also contends that the first prong of the *Jimenez Fuentes* test should focus upon the City as the pertinent "department or agency," not on the OFP. Ortiz does not contend that this shift in focus would alter the first-prong inquiry itself, since under either scenario the City or the OFP would have to undertake the politically sensitive mission of allocating federal funds among various constituencies within the municipality. He argues, instead, that the shift in focus could affect the inquiry under prong two, *see infra* Section II.B.3(b), since Ortiz could then be viewed as a subordinate City official rather than the *head* of the first-prong "department or agency" (i.e., the OFP). Be that as it may, the attempt to distance Ortiz from political decisionmaking not only distorts the function of the second-prong inquiry under *Jimenez Fuentes*, but runs counter to our precedent in *O'Connor*, where we focused the inquiry under prong one upon the municipal *department* of public works, rather than the *municipality*. *See O'Connor*, 994 F.2d at 907–08; *supra* note 3.

"may present additional evidence at trial" besides the disputed OP–16). Nor does the absence of a written, signed job description preclude summary judgment, so long as defendants adduce other competent evidence as to the responsibilities inherent in the OFP directorship from which the "political" nature of the position can be determined as a matter of law, *see McGurrin Ehrhard,* 867 F.2d at 93 (ultimately, the *Branti/Elrod* defense poses a question of law), even though some nonessential facts may remain in dispute. *See Mariani Giron v. Acevedo Ruiz,* 877 F.2d 1114, 1117 n. 5 (1st Cir.1989).[5]

#### b) *The Responsibilities Inherent in the Position*

■ Ortiz contends that the district court incorrectly assessed the record evidence relating to the duties inherent in the OFP directorship. He claims that he administered the OFP in a politically-neutral fashion and took no meaningful part in mayoral "policymaking" or "political" decisions concerning federal funding allocations among the various constituencies within the municipality.

As previously noted, probative indicia that a position is "political" include " 'relative pay, technical competence, power to control others, authority to speak in the name of policymakers, public perception, influence on programs, contact with elected officials, and responsiveness to partisan politics and political leaders.' " *O'Connor,* 994 F.2d at 910 (citations omitted). Defendants adduced evidence that Ortiz had not had to compete with other candidates for the OFP directorship. Moreover, Ortiz concedes that he was no "expert" in the financial and accounting aspects of the OFP's responsibilities. Thus, we think the evidence does not support a fair inference that Ortiz was selected for his managerial or technical expertise. Moreover, Ortiz' prominent PDP affiliation, *see* Ortiz Deposition at 179–81 (acknowledging that, at various times, he was a "political activist," electoral commissioner, and campaign finance director for the PDP and PDP candidates), plainly permits a fair inference that he was selected for the OFP directorship based on his "political" service and talents. *See McGurrin Ehrhard,* 867 F.2d at 93 (finding position "political" where plaintiff, formerly a clerical employee, was tapped for position as director of secretary of state's regional office, after having worked on Secretary's state senate campaign, and where Secretary "did not advertise the job, solicit applications, or ... consider any [other] applicant").

■ More importantly, Ortiz was appointed to *head* the OFP, whose overall functions clearly involved " 'decision making on issues where there is room for political disagreement on goals or their implementation,' " under the first prong of the *Jimenez Fuentes* test. *See supra* Section II.B.2.[6] By his own account, Ortiz was in complete charge of the OFP staff,[7] as well as the

---

5. The district court relied on the lack of a written job description as probative evidence that the OFP directorship *is* a "political" position. *Ortiz Pinero,* 900 F.Supp. at 580 (citing *Mendez–Palou,* 813 F.2d at 1262–63 (" '[A]n employee with responsibilities that are not well defined or are of broad scope more likely functions in a policymaking position.' ") (citing *Elrod,* 427 U.S. at 368, 96 S.Ct. at 2687)). But since the City had adopted no job description for *any* position, *cf. supra* note 1, and it obviously could not reasonably be inferred on that basis that all City positions are "political," we give no weight to such an inference in the present context.

6. *See, e.g., O'Connor,* 994 F.2d at 911 ("[W]hatever difficulties we might face in applying the second prong of the *Jimenez Fuentes* test to subordinate positions within the Department, the Superintendent's 'inherent responsibilities' ... plainly ' "had a bearing on the partisan goals and policies" ' of the Department as a whole.")

(citations omitted); *De Choudens,* 801 F.2d at 9–10 (noting that it would have been much more likely that the position would be considered "political" had plaintiff been *president* of the bank, rather than senior vice-president); *cf. Juarbe–Angueira,* 831 F.2d at 15 (finding it not "clearly established" that regional directorship of public building authority was other than a "political" position, even though it involved only a " 'modicum' of 'policymaking responsibility,' " given that supervisory position was "moderately-high-level position within the agency").

7. Ortiz points out that he supervised an OFP staff of only four persons (accountant, secretary, and two clerks). As we have noted, however, the *relative* staff size, not its absolute size, affords the more illuminating insight. *See, e.g., O'Connor,* 994 F.2d at 911 n. 3 (noting that, on per-capita basis, plaintiff's supervision of smaller municipality-level staff may be equivalent to supervision

applications for, and the administering of, all federal grant and loan programs involving the City, amounting to approximately one-third of its municipal budget. *See* Ortiz Deposition, at 29–30.[8]

 Ortiz reported directly to the mayor, rather than through intermediaries, meeting with him on an average of six or seven times a year. *Cf. Mendez–Palou,* 813 F.2d at 1260 (noting that plaintiff performed duties with "only general instructions and superficial supervision" from the administration). He served as the mayor's "eyes" and "ears," periodically visiting public work projects and reporting back to the mayor on their progress. *See McGurrin Ehrhard,* 867 F.2d at 95 (noting that employee who acted as "eyes and ears" for secretary of state engaged in an "overtly political task[ ]").[9] Such first-person (thus, more subjective) field assessments often influence policy formulation, and policymaking influence, even though indirect, is an important indicium of "political" positions.[10]

Ortiz admittedly received and reviewed copies of federal audits and oversight reports, including the Federal Transit Adminis-

tration's Triennial Review of the City's federally funded transit program, which identified areas where the City was not in compliance. *See* Defendant's Exh. 6; *see also* 49 U.S.C. § 5307(i)(2). This politically-sensitive report is precisely the type of document whose contents are not likely to be shared freely with any but the mayor's trusted political confidants for fear it might become fodder for the political opposition. *Cf. Mendez–Palou,* 813 F.2d at 1262–63 ("[W]e believe that an official working in close contact with the head of a government agency is also more likely to be privy to a substantial amount of confidential information. . . .").

Finally, Municipal Ordinance No. 3, enacted in 1981 pursuant to P.R. Laws Ann. tit. 3, § 1351, designates only eleven municipal offices as positions of "trust" or "confidentiality," including the Director of the Office of Federal Programs.[11] Consistent with the ordinance, former Mayor Caraballo notified Ortiz in writing on December 24, 1992, that he was among the eleven municipal officials who must resign to make way for the incoming NPP administration.

---

of much bigger staff in a larger municipality); *McGurrin Ehrhard,* 867 F.2d at 95 (finding position "political" even though plaintiff supervised four-person regional office, where satellite branch was but one of two such offices in Massachusetts).

8. We reject the contention that the April 1993 certification of duties issued by the City personnel department, *see supra* note 1, is without any probative force because it is unsigned and was not prepared until after Ortiz left office. Of course, an OP–16 signed by the employee has added probative value since it constitutes the employee's contemporaneous "admission" concerning the duties inherent in the position. But it does not follow that the unsigned certificate, by which the City prospectively commits itself to its description of the duties inherent in the OFP directorship, is without probative weight. Although we have noted that an unsigned OP–16 may leave a factual dispute as to its authenticity, *see Romero Feliciano,* 836 F.2d at 3–4, Ortiz asserts no challenge either to the authenticity or the validity of the certification. Nor did we suggest in *Romero Feliciano* that such evidence should be completely discounted in a trial on the merits.

9. *See Jimenez Fuentes,* 807 F.2d at 246 (noting that "political" position holders, like directors, "monitor the progress of the agency's programs

and thus gauge the success of the Administration's . . . policies"); *cf. Mendez–Palou,* 813 F.2d at 1260 (finding it relevant that plaintiff "represents the President in activities . . . [and gives] top level counselling [to] the President").

10. *See McGurrin Ehrhard,* 867 F.2d at 94 (noting that plaintiff did not have "final authority to hire or fire employees, [but] she had 'input' "); *Jimenez Fuentes,* 807 F.2d at 245 ("That Regional Directors do not have final decision-making authority is not determinative . . . . 'because such positions [i.e., directorships] are a natural source of influential recommendations of changes in policy.' ") (citation omitted).

11. Section 1351 of the Personnel Act provides, in pertinent part:

1. Each [commonwealth] agency shall present for approval of the [Central] Office [of Personnel Administration] a plan containing the confidential positions by which it desires to operate. In the case of municipalities, the Municipal Assembly shall follow the ordinance or resolution approving the plan submitted by the mayor and shall send it to the Office *for the sole purpose of ascertaining that the provisions of section 1350 of this title have been complied with.*

P.R. Laws Ann. tit. 3, § 1351 (emphasis added).

Against this formidable array, Ortiz offers five arguments. First, he contends that Municipal Ordinance No. 3 is a nullity because the defendants have not shown that it was duly submitted to the Central Office of Personnel Administration for *approval,* as supposedly required by the Personnel Act. *But see supra* note 11. This claim is unavailing.

■ On its face, the ordinance reflects that it had been submitted to the Central Office of Personnel Administration ("Central Office") for *review. See* Municipal Ordinance No. 3, § 3. Thus, the burden lay with Ortiz to show that the City did not comply with the statutory requirements,[12] and he proffered *no evidence that the ordinance was not duly submitted to the Central Office. See O'Connor,* 994 F.2d at 906–07 (noting that summary judgment opponent must proffer more than " 'conclusory allegations, improbable inferences, and unsupported speculation' ") (citation omitted). In all events, the statutory language does not purport to make submission to the Central Office a prerequisite to the *validity* of Municipal Ordinance No. 3. Rather, the requirement of post-enactment compliance "review" by the Central Office, *in relation to a municipal ordinance,* stands in sharp contrast to the heightened obligation of *Commonwealth agencies* to seek Central Office *approval. See* P.R. Laws Ann. tit. 3, § 1351 (mayor's "plan" to be submitted to Central Office "for the sole purpose of ascertaining that the provisions of section 1350 of this title have been complied with"). *See* Appendix A for text of § 1350.

■ Second, Ortiz correctly notes that state laws identifying government positions as "trust" or "confidential" are not dispositive of the federal-law question whether a particular position is "political." *See Jimenez Fuentes,* 807 F.2d at 243 n. 9. On the other hand, we have explained that state laws and municipal ordinances designating positions as "trust" or "confidential"—like P.R. Laws Ann. tit. 3, § 1351, and Municipal Ordinance No. 3—are entitled to "some deference" under the *Branti/Elrod* formula, *see Jimenez Fuentes,* 807 F.2d at 246; *accord Juarbe–Angueira,* 831 F.2d at 14, especially where other evidence clearly points in the same direction.

Third, Ortiz attempts to estop defendants from asserting a *Branti/Elrod* defense by pointing to the putative assurance made to him by Mayor Caraballo in August 1991, that the OFP directorship was not a "trust" position, *see supra* p.2. Even this evidence is not hefty enough to ward off summary judgment, however.[13]

■ For one thing, application of the equitable estoppel doctrine against governmental entities, including municipalities, is narrowly circumscribed. *See Heckler v. Community Health Servs. of Crawford County,* 467 U.S. 51, 60–62, 104 S.Ct. 2218, 2224–25, 81 L.Ed.2d 42 (1984). Moreover, any attempt to interpose estoppel as a bar to the *Branti/Elrod* defense must fail, since reliance on the Caraballo representation would not have been objectively reasonable in the circumstances. *See United States v. Javier Angueira,* 951 F.2d 12, 16 (1st Cir. 1991) (noting that even if estoppel is available against governmental entity, " 'the party raising the [estoppel] defense must have reasonably relied on some "affirmative misconduct" attributable to the sovereign.' ") (citations omitted); *A.E. Alie & Sons v.*

---

12. We recognize that the burden of proof normally shifts to the governmental entity to establish that the *substantive* requirements of its enactment comport with the First Amendment. But we have found no authority, nor can we discern any sound reason, for shifting the burden of proof where the challenging party alleges only *procedural* irregularities of nonconstitutional dimension in an ordinance-enactment process. *See, e.g., Friends of the City Market v. Old Town Redev. Corp.,* 714 S.W.2d 569, 575 (Mo.Ct.App. 1986) ("Ordinances are presumed to have been adopted in accordance with the requirements of the law . . . .").

13. We note, as a threshold matter, that its admissibility is far from clear. *See* Fed.R.Civ.P. 56(e). Even assuming that former Mayor Caraballo could bind the City by his representations, *see* Fed.R.Evid. 801 (permitting "admissions" of *party-opponent* ), it is extremely problematic whether the successor mayor, defendant Rivera, can be bound, especially since the very nature of the § 1983 claim made by Ortiz appears to preclude any characterization of former Mayor Caraballo as a party "opponent." As this evidence is otherwise deficient, however, we need not determine its competence at this time.

*United States Postal Serv.,* 897 F.2d 591, 593 (1st Cir.1990) (same).

Immediately prior to his appointment to the OFP directorship, Ortiz, concededly a "political activist," served for three years as City *assemblyman,* a position which would have brought all City ordinances within his constructive knowledge. *See Texaco, Inc. v. Short,* 454 U.S. 516, 531 n. 25, 102 S.Ct. 781, 793 n. 25, 70 L.Ed.2d 738 (1982) (noting that all persons are charged with knowledge of the provisions of duly enacted statutes/ordinances); *Deibler v. City of Rehoboth Beach,* 790 F.2d 328, 331 (3d Cir.1986) (same); *cf. Good v. Dauphin County Social Servs. for Children and Youth,* 891 F.2d 1087, 1091 (3d Cir.1989) (reasonably competent government officials should know laws governing their conduct). Similarly, Ortiz admitted to having served for four years in a previous "trust" position, as Regional Director of the Administracion de Derecho al Trabajo, making it highly unlikely that he was not on actual notice of P.R. Laws Ann. tit. 3, § 1351, or of the fact that municipalities were required to designate certain "trust" positions *by ordinance.*

Fourth, without citing either authority or a policy rationale, Ortiz argues that the OFP directorship cannot be considered a "political" position since there is no requirement that the municipal assembly approve the mayor's selection for the post. We think this far too thin a reed to warrant rejection of the traditional *Branti/Elrod* criteria. Many "political" appointments (e.g., to the executive staff of a governor or mayor) are not subject to legislative approval, a requirement which correlates more closely to the issue of political accountability in the legislative branch, than to the partisan political attributes of an executive position.

Finally, Ortiz insists that the OFP directorship duties actually performed by him under Mayor Caraballo were merely administrative and technical, that Caraballo alone decided how federal funds were to be spent, and that Ortiz merely informed the mayor regarding the administrative status of federal funding applications. These claims are insufficient to overcome the well-supported legal determination, *see supra* pp. 14–16, that

the OFP directorship is a "political" position. At most, Ortiz' contrary characterizations, fully credited, establish the services actually rendered by Ortiz while he served as the director, as distinguished from the responsibilities inherent in the position itself. *Cf. Mendez–Palou,* 813 F.2d at 1258 (actual duties not as probative as inherent duties). As the ultimate issue presented is one of law, rather than fact, *McGurrin Ehrhard,* 867 F.2d at 93, summary judgment was warranted on the political discrimination claim.

## C. *Due Process Claim*

 Ortiz advances essentially the same arguments as support for the due process claim: that he had a legitimate expectation of continued employment under commonwealth law, which gave rise to a "property right" entitling him to a pretermination hearing. *See Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). The pretermination process due a government employee is a matter of federal law, *see Rivera–Flores v. Puerto Rico Tel. Co.,* 64 F.3d 742, 749 (1st Cir.1995), whereas the preliminary question whether a government employee possessed a protectable "property right," or a legitimate expectation of continued employment, is controlled by the employment contract or state law. *See id.*

Since Ortiz' employment contract included a clause permitting his unilateral, unconditional termination by the mayor at any time, commonwealth or local law would be the only possible basis for an actionable claim to continued employment. Accordingly, Municipal Ordinance No. 3 is dispositive of the due process claim, since it designates the OFP directorship as a "confidential" position, pursuant to P.R. Laws Ann. tit. 3, § 1351. The Personnel Act in turn defines "confidential" appointees as, *inter alios,* "those who intervene or collaborate substantially in the formulation of public policy, who advise directly or render direct services to the head of the agency," and are subject to "free selection and removal." *Id.* § 1350. Thus, Ortiz had neither a property right nor a contract right to continued employment as OFP Director, and defendant-appellee Rivera was under no

constitutional obligation to afford him a pre-termination hearing.

## III

### *CONCLUSION*

The claims for damages are barred under the doctrine of qualified immunity, because Ortiz failed to demonstrate that it was "clearly established" that the OFP director-ship was not a "political" position. *See Mendez–Palou,* 813 F.2d at 1259–60. Furthermore, since we conclude as a matter of law that the OFP directorship was indeed a "political" position, the claims for damages *and reinstatement* are foreclosed on the merits. Finally, the due-process claim fails because Ortiz possessed no right to, or reasonable expectation of, continued employment as OFP director.

***The judgment is affirmed; costs to appellees.***

### *APPENDIX A*

### LAWS OF PUERTO RICO ANNOTATED

### TITLE THREE. EXECUTIVE

### CHAPTER 51. PUBLIC SERVICE PERSONNEL

### SUBCHAPTER V. PERSONNEL ADMINISTRATION SYSTEM; STRUCTURE

§ 1350. Confidential employees

Confidential employees are those who intervene or collaborate substantially in the formulation of the public policy, who advise directly or render direct services to the head of the agency, such as:

(1) Officers appointed by the Governor, their personal secretaries and drivers; as well as their executive and administrative assistants who answer directly to them.

(2) Heads of agencies, their personal secretaries and drivers; as well as their executive and administrative assistants who answer directly to them.

(3) Assistant heads of agencies and their personal secretaries and drivers.

(4) Regional directors of agencies.

(5) Personal secretaries and drivers of officials selected by popular election, as well as their assistants who answer directly to them.

(6) Members of boards or standing committees appointed by the Governor and their respective personal secretaries.

(7) Members and personnel of boards or commissions appointed by the Governor having a specific period of effectiveness.

(8) Personnel of the offices of the Puerto Rico Ex–Governors.

Confidential employees shall be of free selection and removal. Likewise confidential shall be those employees who though of free selection may be removed only for good cause by provision of law or those whose appointment is for a term pre-fixed by law.

Every regular employee in a career position who is appointed to a confidential position shall be entitled to be reinstated in a position equal or similar to the last one he held in the career service.