340 F.Supp.2d 142 (2003)
Jose REYES CAÑADA, et al., Plaintiffs,
v.
Cesar REY HERNÁEZ, et al., Defendants.
Civil No. 01-1542 (JAG/GAG).
United States District Court, D. Puerto Rico.
October 12, 2004.
Alice M. Velazquez, Claudio Aliff-Ortiz, Ivan M. Castro-Ortiz, Pablo Landrau-Pirazzi, Guaynabo, PR, for Plaintiff.
Eduardo A. Vera-Ramirez, Eileen Landron-Guardiola, Frederic Chardon-Dubos, Luis A. Rodriguez-Munoz, Landron & Vera LLP, Guaynabo, PR, Glorianna S. Hita-Valiente, Luisselle Quinones-Maldonado, Marie L. Cortes-Cortes, Hato Rey, PR, Grisselle Gonzalez-Negron, Pedro Santiago-Rivera, Rafael Escalera-Rodriguez, Maria L. Santiago-Ramos, San Juan, PR.

*143 OPINION AND ORDER

GELPI, United States Magistrate Judge.
On August 17, 2004, the Court held an evidentiary hearing to determine whether co-plaintiff, Iris Rivera-Ruiz ("Rivera-Ruiz"), could be removed from her trust position of Director of the Department of Education Sexual Harassment Complaints Office ("Office"), pursuant to the Elrod-Branti doctrine. See Elrod v. Burns, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); Branti v. Finkel, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980); see also Jimenez-Fuentes v. Torres-Gaztambide, 807 F.2d 236 (1st Cir.1986), cert, denied, 481 U.S. 1014, 107 S.Ct. 1888, 95 L.Ed.2d 496 (1987). Upon conclusion of said hearing, the Court allowed the parties to file memoranda on the matter. The same have been duly filed (Docket Nos. 351 and 356). Upon due consideration, the Court concludes that the trust position at issue relates to partisan political interests or concerns. Accordingly, the plaintiff could be removed from the same based on her political affiliation.

I. LEGAL ANALYSIS

A Applicable Law
In Jimenez-Fuentes, 807 F.2d at 241, the Court of Appeals for the First Circuit discussed the raison d'etre of the Elrod-Branti doctrine:
[R]epresentative government needs a certain amount of leeway for partisan selection of agents in order to work ... [This is so] a new administration ... [may] be given the opportunity to fulfill expectations, it must have available and also appear to have available significant facilitators of policy, people who have the personal and partisan loyalty, initiative, and enthusiasm that can make the difference between the acclaimed success of a government agency or program and its failure or, more typically its lackluster performance. The presence of such persons advances the goals of representative government.
The Court of Appeals further established a two-pronged test to identify those positions under the Elrod-Branti analysis for which political patronage is permissible. First, the Court must determine the overall functions of the employee's position entail "decision making on issues where there is room for political disagreement, goals or their implementation." 807 F.2d at 241-42. Second, the Court must analyze the particular responsibilities of the employee's position, within the specific agency or department, to determine whether the position resembles that of "a policymaker, privy to confidential information a communicator, or some after office holder whose functions is such that party affiliation is an equally appropriate requirement" to remain in the position. Id. at 242.
In performing the above analysis, the court must heed the caution against "unduly myopic view" of "the role of politics in the seemingly apolitical context of universal provision of services." Tomczak v. City of Chicago, 765 F.2d 633, 641 (7th Cir. 1985), cert, denied, 474 U.S. 946, 106 S.Ct. 313, 88 L.Ed.2d 289 (1985). "While the ultimate goal of all sides might be the same, there is clearly room for principled disagreement in the development and implementation of plans to achieve that goal." O'Connor v. Steeves, 994 F.2d 905, 910 (lst.Cir.1993).

B. Duties of the Director of the Sexual Harassment Office and the Elrod-Branti Doctrine
Although obviously fact-intensive, the ultimate determination whether a government position is "political" presents a *144 question of law for the Court, rather than an issue of fact for jury resolution. Ortiz-Pinero v. Rivera-Arroyo, 84 F.3d 7, 12 (lst.Cir.1996). To that effect, the Court must delve into the substance of the position's inherent duties, rather than to loosefitting labels such as "confidential" or "policymaking." Id., 12.
Absent a written job description [1], the defendant presented into evidence a Department of Education certification which outlines Rivera-Ruiz' duties as Director of the Office. The Court notes that the Plaintiff did not object to the certification's content. See Plaintiffs Memorandum of Law, p. 1-2 (Docket No. 351); (Tr. 185).
Besides the mundane tasks inherent to her position[2], Rivera-Ruiz' duties also included (1) drafting correspondence and preparing all those reports related to the Office, (2) developing the training plan for the office personnel, (3) preparing the regulations and procedures to be followed in the agency in accordance with the laws, (4) assuring compliance with the legal norms and establishing regulations, and, (5) attending meetings, conferences and activities in self-representation or that of the Secretary of Education in and out of Puerto Rico. Plaintiffs Memorandum of Law, p. 1-2 (Docket No. 351). While Rivera-Ruiz stressed at the evidentiary hearing that she did not, as a matter of fact, perform said tasks, such an argument is irrelevant for the Court's purpose. As noted by the plaintiff, the crux of the Court's inquiry is not whether the performed duties satisfy the Elrod-Branti doctrine, but rather, if the inherent functions of her position, whether they were performed or not, justify political patronage, warranting her removal for political reasons. Plaintiffs Memorandum of Law, p. 4 (Docket No. 351). See Ortiz-Pinero, 84 F.3d. at 12.
The plaintiffs characterization of her duties as the "mere investigation of sexual harassment complaints"[3] fails to take into account the very nature of her employment as Office Director, and the duties she herself accepted in the Department certification. As Director of the Office, Rivera-Ruiz supervised the implementation of the Office's processes and procedures, as well as the work of the nine employees under her direction. (Tr. 190, 207). By her own account, Rivera-Ruiz, since she was first named Director, was responsible for executing public policy. (Tr. 207). Irrespective of whether partisan politics should in theory play a role in her position or not[4], if there is room for political disagreement, the first prong of the Elrod-Branti test will be met. As a result of Rivera-Ruiz' duties at the Sexual Harassment Complaints Office, and the lack of any substantive argument to the contrary, the Court deems the first-prong of the Elrod-Branti test as being met.
The second prong of the ElrodrBranti test requires the Court to determine if *145 Rivera-Ruiz' position entailed duties of such nature that party affiliation is an appropriate requirement. Jimenez-Fuentes, 807 F.2d at 241-42. Probative indicia that a position is politically sensitive includes relative pay, technical competence, power to control others, authority to speak in the name of policymakers, public perception, influence on programs, contact with elected officials, and responsiveness to partisan politics and political leaders. O'Connor, 994 F.2d at 910.
At the evidentiary hearing, Rivera-Ruiz testified that she was a known member of the New Progressive Party ("NPP") and that she had held previous trust positions while the NPP administration was in power. Moreover, Rivera-Ruiz admitted that she was appointed Office Director by the previous Secretary of Education, Victor Fajardo, a fellow NPP member, without having to interview for the position, and without any prior experience in the field, or legal background. (Tr. 204-05, 225). While the Court does not doubt Rivera-Ruiz' competence, the factors mentioned all gravitate towards a reasonable inference that her position as Office Director was given to her because of her political affiliation rather than her professional qualifications.
In addition, the duties certification admitted into evidence clearly states that Rivera-Ruiz was to represent the Secretary of Education. While she alleges that she never in fact did so, it is a function inherent to her position for purposes of the Court's analysis.
Finally, as Office Director, Rivera-Ruiz was responsible for the execution of the Office's public policy and the receipt of the initial sexual harassment complaint. Hence, her influence on the program and public perception was considerable.
In conclusion, the Court finds that the position of Director of the Department of Education's Sexual Harassment Complaint Office was one for which political patronage was an appropriate requirement. The evidence brought before the Court clearly demonstrates that both prongs of the Elrod-Branti test have been met, thus warranting the DISMISSAL of Rivera-Ruiz' First Amendment claim.
The Court finds no inconsistencies between the present ruling and that in a previous order relating to co-plaintiff Luis A. García-González. See Reyes-Canada v. Rey Hernandez, 326 F.Supp.2d 255 (D.Puerto Rico 2004). There, the plaintiff was a mere investigator, while in the case at bar, Rivera-Ruiz' duties are those of a Director. As such, her inherence in Department matters such as public policy carries with it functions and influence which García-González did not possess. The present ruling, however, in no way alters or affects Rivera-Ruiz' surviving political harassment claim following her reinstatement to a career position, since the defendants have not requested summary judgment on the matter.

II. Conclusion

Having considered all the relevant evidence presented by both parties, the Court finds that the Elrod-Branti doctrine is applicable to the matter at bar, for which co-plaintiff Iris Rivera-Ruiz' First Amendment claim regarding her removal as Director of the Sexual Harassment Complaints Office is hereby DISMISSED.
IT IS SO ORDERED.
NOTES
[1] The presence or absence of a written job description is not dispositive. Furthermore, the absence of such job description does not, in and of itself, preclude ruling on the issue, "so long as defendants adduce other competent evidence as to the responsibilities inherent" to the position. Ortiz-Pinero, 84 F.3d at 14.
[2] Rivera-Ruiz duties included (1) directing, planning, organizing and supervising the technical and administrative work in the Office, (2) counseling Office personnel and other employees in regards to applicable Puerto Rico law, (3) keeping evidence and statistics of all cases investigated, and (4) carrying out other required tasks. Plaintiffs Memorandum of Law, p. 1-2 (Docket No. 351).
[3] Plaintiffs Memorandum of Law, p. 6 (Docket No. 351).
[4] Id.