José Luis ROMERO FELICIANO, et
al., Plaintiffs, Appellees,

v.

Hon. Jaime TORRES GAZTAMBIDE,
etc., et al., Defendants, Appellants.

No. 86–1606.

United States Court of Appeals,
First Circuit.

Argued Feb. 3, 1987.

Decided July 24, 1987.

Order on Denial of Rehearing and
Rehearing En Banc Jan. 5, 1988.

Rehearing and Rehearing En Banc
Denied Feb. 23, 1988.

José Sánchez Alvarez with whom Ramírez & Ramírez, and Héctor Rivera Cruz, Secretary of Justice, Hato Rey, P.R., were on brief for defendants, appellants.

Frank Rodríguez García, Ponce, P.R., was on brief for plaintiffs, appellees.

Before BOWNES, TORRUELLA and WISDOM,* Circuit Judges.

TORRUELLA, Circuit Judge.

This is an appeal of a preliminary injunction issued in a political discrimination suit brought under 42 U.S.C. § 1983. The appeal primarily raises issues related to the review of findings of fact by the district court. We affirm.

*Introduction*

José Luis Romero Feliciano (Romero) served as Director of the Office of Emergency, Security and Civil Defense (ESCD) in the Housing Department of the Commonwealth of Puerto Rico, until he was demoted in March 1985 by the then Secretary of Housing, Jaime Torres Gaztambide. Romero claims that he was demoted solely because of his affiliation with the New Progressive Party (NPP), which was defeated in the 1984 elections by the Popular Democratic Party (PDP). Romero filed a § 1983 civil rights action against Torres Gaztambide, *et al,* alleging that the demotion violated his associational rights, and seeking damages and reinstatement.

After a hearing the district court granted Romero a preliminary injunction restoring him to his job. The court found that Romero was likely to prevail on his claim that the demotion was politically motivated. Furthermore, the court ruled that the defendants were not likely to prevail on their affirmative defenses that Romero would have been demoted regardless of his affiliation and that political affiliation was an appropriate requirement for the position of ESCD director. The court also found that Romero would be irreparably harmed by waiting for a final judgment, that the harm to Romero outweighed any harm to defendants, and that a preliminary injunction would not harm the public interest. *See Planned Parenthood League of Massachusetts v. Bellotti,* 641 F.2d 1006, 1009 (1st Cir.1981).

Our review of the preliminary injunction is limited to determining whether its issuance was an abuse of discretion. *See*

* Of the Fifth Circuit, sitting by designation.

*Collazo Rivera v. Torres Gaztambide,* 812 F.2d 258, 259 (1st Cir.1987); *Jiménez Fuentes v. Torres Gaztambide,* 807 F.2d 236, 239 (1st Cir.1986). The Secretary urges that the district court abused its discretion in finding that Romero was likely to succeed on the merits and in finding that Romero would be irreparably harmed. More specifically, the Secretary argues that he did not demote Romero because of political affiliation, that political affiliation is an appropriate requirement for the Director of the Office of ESCD in any case, and that any harm resulting from the demotion is compensable.

I. *Political Motivation Behind the Demotion*

At the preliminary injunction hearing Romero presented the following evidence that his demotion was politically motivated. First, Romero has been an active member of the NPP. Second, the Secretary is a member of the PDP. Third, at a meeting of the Housing Department transition team, a member of that team told Romero, in the Secretary's presence, that they knew Romero was a NPP activist. Fourth, Romero was demoted only a few months after the PDP took control. Finally, the Secretary appointed an active member of his own party to serve as Acting Director of the Office of ESCD after Romero's demotion.

The district court found this evidence sufficient to create an inference that party affiliation was the motivating factor in the demotion. This finding was not clearly erroneous. The Supreme Court of Puerto Rico has observed that, given the heated political climate in Puerto Rico and the historical importance of patronage to the incumbent party, the replacement of a member of the party out of power with a member of the party in power creates an inference of political discrimination. *See Colón v. CRUV,* 84 J.T.S. 52 (1982). Furthermore, as both the district court and this court are well aware, the number of cases alleging politically motivated demotions and discharges during the time Romero was demoted has sharply increased. *See, e.g., Jiménez Fuentes,* 807 F.2d at 238–39; *cf. Collazo Rivera,* 812 F.2d at 258–59. The Secretary's primary rebuttal to this

inference was a self-serving statement, during the third day of the preliminary injunction hearing, that he had only learned that day that Romero was a member of the NPP.

The Secretary also attempted to show that he would have demoted Romero regardless of political affiliation. *See Mt. Healthy City School Dist. Bd. of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). But this evidence was fragmentary, inconclusive, and ultimately undercut by the Secretary's assertion that he simply did not trust Romero, without hard facts as to why. The district court found that "the only qualification" the person appointed as acting director after Romero's demotion "had for the job of ESCD Director, which plaintiff did not have, was his affiliation with the PDP." The court's consequent ruling, that the Secretary had not raised a credible *Mt. Healthy* defense, was not clearly erroneous.

II. *Political Affiliation as Appropriate Requirement for the Position*

The Secretary also defended his actions on the grounds that political affiliation is an appropriate requirement for the position of ESCD Director. We have recently articulated a two step analysis for this defense. *See Jiménez Fuentes,* 807 F.2d at 241–42. First, does the position implicate partisan interests? If so, do the inherent responsibilities and duties of that position make political affiliation an appropriate job requirement. *See id.* Although we have resisted rigid use of labels, this second step has generally focused on whether the position involves "policymaking, access to confidential information, communications, or similar functions for which party loyalty is an appropriate requirement." *Collazo Rivera,* 812 F.2d at 261.

The district court found that the ESCD Director has four primary responsibilities. (1) The Director supervises the office's responsibility for the security of the Housing Department headquarters. That responsibility involves supervising two receptionists and two security guards and issuing identification cards. (2) The Director supervises the office's responsibility for civil defense. That responsibility involves overseeing one employee who coordinates with the Civil Defense Agency, primarily by providing information on the availability of housing in Department-owned buildings in the event of an emergency. (3) The Director supervises the office's responsibility for squatter problems. That responsibility involves overseeing four squatter technicians who are occasionally called upon to evict squatters. It is not clear what else these technicians do, since most squatter evictions are handled by the police. In any case, the office does not have responsibility for deciding whom to evict. (4) The Director supervises the office's responsibility for the Housing Department's industrial dispensary. That responsibility involves supervising two nurses and maintaining the supply of medication. The Director also supervises a deputy director and two secretaries, bringing the total number of employees under his direction to 15.

The district court based these findings on the testimony of Romero and the deputy director who served under Romero and who was then serving under the acting director. The Secretary submitted a document from the Commonwealth Central Personnel Administration Office, the "OP–16," that purports to list the official duties of the ESCD Director. The duties listed in that document give the Director broader responsibility for internal security, civil defense, and squatter problems than Romero testified to. Although we have considered the OP–16 dispositive in other Puerto Rico political discrimination cases, *see, e.g., Méndez Palou v. Rohena Betancourt,* 813 F.2d 1255 (1st Cir.1987), this case presents a significant factual wrinkle; unlike the plaintiffs in the previous cases, *Romero had not signed the form.* In fact, he claimed that he had never seen it and that it did not accurately describe the position. Thus, it cannot be considered an admission; the duties of the position are in dispute.

■ In considering the merits of this case, the district court must, of course, heed our admonition that the trier of fact make its decision on the basis of the *inherent* duties of the position, not just those of a particular incumbent. *See Méndez Palou,* 813 F.2d at 1258; *Jiménez Fuentes,* 807 F.2d at 242. But the Secretary bears

**4**

the burden of the political affiliation defense; he must prove what the inherent duties are. The Secretary presented no evidence, other than the disputed OP–16, that the inherent duties of the position are significantly different than Romero's actual duties. Although the Secretary stated that he would like the next ESCD Director to perform the expansive duties listed in the OP–16, the acting director appointed to replace Romero had fewer responsibilities than Romero. The Secretary may present additional evidence at trial that may compel a different result. But on this record, and at this point in the case, we cannot say that the district court's decision to discount the OP–16 and to rely on Romero's testimony was an abuse of discretion.

█ Given these findings on the duties of the ESCD Director, this is not a difficult case. The four components of the position —providing security for Housing Department headquarters, assisting the Civil Defense Agency with temporary housing, evicting squatters when told, and running a dispensary—fail both steps of the *Jiménez Fuentes* analysis. The position does not involve partisan political concerns. And the duties themselves do not involve "policymaking, access to confidential information, communications, or similar functions for which party loyalty is an appropriate requirement." *Collazo Rivera*, 812 F.2d at 261. The ESCD Director provides the Housing Department with routine services whose quality depends on administrative competence and conscientious work, not political affiliation.

III. *Irreparable Harm*

█ It has long been held that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673, 2690, 49 L.Ed.2d 547 (1976). Given the finding that Romero was likely to succeed on the merits of his First Amendment claim there was no abuse of discretion in finding irreparable harm. *See id.* at 374, 96 S.Ct. at 2690. The harm Romero would suffer is not only, as the Secretary argues, the loss of his job *per se,* but also the penalty for

\* Of the Fifth Circuit, sitting by designation.

exercising his associational rights. The chilling effect of that penalty cannot be adequately redressed after the fact.

The decision of the district court is *affirmed.*

### ORDER

Before CAMPBELL, Chief Judge, WISDOM, \* Senior Circuit Judge, COFFIN, BOWNES, BREYER, TORRUELLA and SELYA, Circuit Judges.

The petition for rehearing or rehearing en banc is denied. We note that plaintiff's challenge to the OP–16 in this case differed from objections to the classification form raised in prior cases, *see e.g., Rosario Nevarez* v. *Torres Gaztambide*, 820 F.2d 525, 528, n.6 (1st Cir. 1987), in that he questioned the authenticity of the document and did not simply argue that the actual duties of the position differed from those stated on the form. *See, e.g.,* Appellee's Brief at 17 ("there was a doubt as to the legitimacy of the documents"). We reiterate our position that the *inherent* duties are the relevant ones in evaluating a job, and that an official classification form whose authenticity is unchallenged constitutes dispositive evidence of those duties.